## DELAWARE, L. & W. R. CO. *v.* CORWITH *et al.*

### (*Supreme Court, General Term, First Department.*  April 17, 1891.)

WAREHOUSEMEN—RECEIPTS—LIABILITIES.

The consignees of merchandise, a firm, indorsed upon a carrier's arrival notice the following order: "Deliver to S. & Sons for our account.  N. CORWITH & CO. Per G. CORWITH;" and then delivered the notice to S. & Sons, warehousemen, who issued warehouse receipts thereupon to G. Corwith instead of the firm.  G. Corwith transferred the receipts to R. for value, and R., in turn, indorsed them for value to S. & Sons, the warehousemen, the goods still remaining in the carrier's possession.  In the meanwhile, the consignees, N. Corwith & Co., transferred their interest in the merchandise to a third party.  *Held*, in the absence of proof of authority on the part of the consignees to the warehousemen to issue a receipt to G. Corwith, the same was invalid and void, and that said warehousemen, coming into possession of said receipt thereafter as indorsees for value, were chargeable with notice of its invalidity, and had no title to said merchandise as against the assignee of said consignees.

Appeal from special term, New York county.

Action by the Delaware, Lackawanna & Western Railroad Company against Frederick M. Stetler and others and Clarence F. Birdseye, impleaded with Nathan Corwith, Jr., and others, to determine the title to certain goods in the plaintiff's possession as between the defendants, claiming under rival assignments.  All parties united in an application to the court to hear all the testimony and decide all questions involved in the action, as between the contesting defendants.  The plaintiff and the defendants, Nathan Corwith, Jr., and others, appeal from a judgment of the court, without a jury, determining the right of the property in dispute to be in the defendants Frederick M. Stetler and others.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Birdseye, Cloyd & Bayliss,* (*Clarence F. Birdseye,* of counsel,) for appellants.  *Elijah S. Cowles,* for respondents.

VAN BRUNT, P. J.  The only question presented to the court upon the trial of this action, and which is involved in this appeal, was as to the ownership of five car-loads of lead delivered by the plaintiff to the defendants F. M. Stetler & Sons.  It appears that at the times hereinafter mentioned the then defendants Nathan Corwith and Nathan Corwith, Jr., were copartners doing business as N. Corwith & Co., and the defendants F. M. Stetler and H. I. Stetler were copartners doing business as warehousemen in the city of New York.  In October, 1888, the plaintiff received at Hoboken the five car-

loads of lead in question, consigned to N. Corwith & Co., and, in the usual course of business, the plaintiff issued arrival notices, as they are called, for this lead, and on the face of the notice was printed a direction to return this notice with order for delivery indorsed on the back. The next day the usual messenger from Corwith & Co. presented these receipts to the warehouse of Stetler & Sons, each of which contained the following indorsement: "Deliver the within to F. M. Stetler & Sons for our account. N. CORWITH & CO. Per G. CORWITH;" G. Corwith meaning Gurden Corwith. On the same day Stetler & Sons, without actually receiving the lead upon the premises or having the same under their control, issued and delivered to said Gurden Corwith five warehouse receipts in his own name. Two days afterwards, and while the lead itself was still in the actual possession and control of the plaintiff, Gurden Corwith sold the lead in question to John Russell & Co., and delivered to them the warehouse receipts, duly indorsed in blank, receiving from Russell & Co. a check drawn to his own order, which appears to have been deposited to his own credit. N. Corwith & Co. subsequently transferred their interest in the lead to other parties; and Stetler & Sons purchased from Russell & Co. the warehouse receipts above mentioned, they being indorsed over to them.

The question presented is whether the defendants Stetler & Sons acquired any title to the lead, or whether the title to such lead was vested in the assignees of N. Corwith & Co. The answer to this question depends entirely upon whether or not Gurden Corwith had authority to sell the lead to Russell & Co. The learned court, in its opinion in the disposition of the case, says: "There is no allegation to show that Gurden Corwith was not authorized to take the receipt in his own name, (referring to the warehouse receipts,) or that it was sold to Russell & Co., without the authority of N. Corwith & Co. On the contrary, it expressly appears that Russell & Co. purchased this lead from Corwith & Co., and the money paid therefor was paid to Corwith & Co., and received by them for their own benefit." We have searched the record in vain to find any proof that Corwith & Co. either authorized the sale of this lead, or received any part of the proceeds arising therefrom. It is true that the evidence shows that in a large number of transactions Gurden Corwith had been accustomed to indorse these delivery notices in the name of Corwith & Co. But there is no evidence whatever that upon any other occasion Stetler & Sons, upon a delivery notice so indorsed, had ever issued a warehouse receipt for the property therein mentioned to Gurden Corwith. All that the indorsement of these delivery notices imported was that the transportation company should deliver to Stetler & Sons, for the account of Corwith & Co., the goods mentioned therein. Some argument is used by the respondents to show that the words "for our account" mean nothing upon the indorsement of the notice, because they are in print. We are not aware that any portion of an instrument is to be disregarded merely because it is printed. Stetler & Sons knew that this lead had been consigned to Corwith & Co. They knew that the transportation company had been directed to deliver it to them for the account of Corwith & Co., and they, in violation of their duty, not having possession of the lead, issued a warehouse receipt therefor, and in addition issued a warehouse receipt to somebody other than the consignees, when they had no evidence whatever that the consignees had transferred their title to anybody else. If they had issued warehouse receipts, as they were in duty bound to do, to those whom they knew to be the owners of the merchandise, this difficulty never would have occurred. But, receiving an order from Corwith & Co. to get for them from the railroad company certain goods, they issued warehouse receipts therefor to a third person, who was in reality a stranger to the transaction, so far as the legal rights of the parties are concerned; and thus placed it in the power of Gurden Corwith to perpetrate the fraud he did by the sale of the lead.

But it is said that Gurden Corwith was the agent of Corwith & Co., and had the right to dispose of the lead. As already stated, the case does not furnish a *scintilla* of evidence showing that he had ever sold for Corwith & Co. a pound of lead prior to this transaction. It did appear that he had signed other delivery notices for merchandise, to be delivered to the warehousemen for the account of his principal, which is done every day by the clerk of a mercantile house, who it is not supposed for a moment has a right to sell the property of the house because he has the right to receive it and direct its storage; and this is the strongest evidence showing the authority which Gurden Corwith had in respect to the affairs of Corwith & Co. We are also referred to the evidence of a witness who testified that he was a clerk in the employ of E. A. Caswell; that he knew the signature of Corwith & Co.; and that the signature of Corwith & Co. upon the back of the delivery notice was their signature by Gurden Corwith. He is then asked the question: "What do you know about his authority to sign?" He answers: "Well, I, on several occasions, have gone down to the office on important matters, and they referred me to Mr. Gurden Corwith. *Question.* To him? *Answer.* Yes, sir; told me he had the power to act for them. *Q.* Mr. Nathan Corwith did? *A.* Yes, sir." To act in what capacity the witness does not say; what the important matters were, or what their nature was, he fails to disclose; and that Gurden Corwith, from this evidence, is to be assumed to have the right to sell the property of Corwith & Co. would be straining his authority considerably beyond that which the evidence would justify. Another witness, Mr. Casey, was asked if he knew whether Gurden Corwith was then acting as their agent or not; and he said he did; and his authority for this statement was the fact that the firm for which he was a clerk sold to Corwith & Co., through Gurden Corwith, certain merchandise, which was paid for by the check of Corwith & Co.; a transaction very far from establishing the authority of Gurden Corwith to sell the property of Corwith & Co. This is substantially all the evidence tending to show that Gurden Corwith had any authority whatever in connection with the affairs of N. Corwith & Co. It seems to us to be clear that there is an utter failure of proof to show that Gurden Corwith had the right to dispose of any portion of the property of Corwith & Co.; and, even if he had, the warehousemen in this case would be liable for the goods, because, knowing that Corwith & Co. were the owners, they issued a warehouse receipt in the name of Gurden Corwith. If the warehousemen had issued the receipt in the name of the real owners of these goods, this fraud never could have been perpetrated, as Russell & Co. would naturally have drawn their check to the order of the owners, and then the money would have gone to the credit of Corwith & Co., and there is no evidence that Gurden Corwith had any authority to indorse checks payable to the order of Corwith & Co., or to draw checks upon their bank account. It is clear that Gurden Corwith, having no authority to sell this lead, could confer no title upon Russell & Co., and Russell & Co. could confer no title upon Stetler & Sons; and that the subsequent transferees of Corwith & Co of that lead were the owners thereof, and entitled to its possession. The judgment should be reversed, and a new trial ordered, with costs to the appellants to abide event.